# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TRACY LEE HAWLEY**,<br>Plaintiff,<br><br>v.<br><br>**CAROLYN W. COLVIN**,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br>Defendant. | 1:13-cv-296 |

## MEMORANDUM OPINION

July 29th, 2014

## I. Introduction

Plaintiff, Tracey Lee Hawley, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), for judicial review of the final determination of the Commissioner of Social Security, who denied her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401 – 433, 1381-1383f (West 2012). The parties have filed cross-motions for summary judgment with briefs in support. (ECF Nos. 11-14). The record was thoroughly developed at the administrative level. (ECF No. 9). Accordingly, the motions are ripe for disposition.

## II. Background

### A. Facts

Plaintiff was born on May 3, 1969. She has a ninth-grade education with past relevant work experience as a cashier, cook, and restaurant manager. (R. 30). The record reflects that she has not engaged in substantial gainful activity since her alleged onset date. (R. 25).

Plaintiff alleges disability as of August 2, 2008, due to several mental health impairments. She received some treatment for her impairments prior to her alleged onset date. In

October 2003, Dr. Robert Rodak, Plaintiff's then-primary care physician, referred her to Safe Harbor Behavioral Health for counseling to deal with her panic attacks, anxiety, and depression. (R. 228). During her intake interview at Safe Harbor, Plaintiff reported that she experienced significant stressors, which included being a single parent, having a disabled child, financial strain, and the break-off of an engagement. (R. 237). She also reported that she had attempted suicide three times in the past and had a history of drug and alcohol abuse. (R. 237). Plaintiff was diagnosed with depression and panic disorder with agoraphobia. (R. 237). In the months following her initial appointment, she attended therapy at Safe Harbor on several occasions. (R. 238). However, records from Safe Harbor indicate that Plaintiff's treatment was terminated in June 2004, after she failed to respond to attempts to reach her. (R. 227).

The record contains treatment notes from Dr. Rodak spanning from January 31, 2005 until January 14, 2009. (R. 243-286). From 2005 until 2007, Dr. Rodak noted that Plaintiff experienced symptoms of anxiety, but that her medications were controlling those symptoms reasonably well. (R. 245, 250, 251). In December 2008, Plaintiff reported that her anxiety was worsening, but a mental status examination did not reveal significant abnormalities. (R. 258-59). A month later, Plaintiff reported that her depression had gotten worse due to "external problems." (R. 254). Upon examination, Plaintiff was anxious, tearful, and displayed a flattened affect. (R. 254). However, no cognitive or perceptual impairments were noted, and Plaintiff denied suicidal ideation. (R. 254).

Plaintiff started seeing a new primary care physician, Dr. Randy Edwards, in January 2009. (R. 410). Over the course of the next year, Plaintiff presented to Dr. Edwards' office on several occasions for treatment of a variety of complaints, none of which related to her mental conditions. (R. 410-40). Be that as it may, Dr. Edwards did keep Plaintiff on her depression and

anxiety medications throughout this period. (R. 410-40).

On October 29, 2009, Dr. Edwards' provided an opinion regarding Plaintiff's mental and physical impairments. (R. 403). He indicated that Plaintiff suffered from "reflux, depression, [and] anxiety disorder", (R. 403), but that these conditions were "controlled on medication," (R. 405). He also noted that Plaintiff had no history of psychiatric treatment or psychiatric hospitalizations. (R. 405). When asked to describe any abnormal emotional symptoms he witnessed during his encounters with Plaintiff, Dr. Edwards wrote, "none." (R. 405). Similarly, he opined that Plaintiff has no restrictions with respect to activities of daily living and social functioning and that her concentration, persistence, and pace were unaffected by her mental condition. (R. 406). He closed by noting that Plaintiff's prognosis was "excellent." (R. 407).

John Rohar, Ph.D., reviewed Plaintiff's file and completed a Psychiatric Review Technique form on November 9, 2009. (R. 473). According to Dr. Rohar, Plaintiff did not satisfy the listings for affective disorders or anxiety-related disorders because she displayed only mild limitations in each of the areas of functioning (activities of daily living, social functioning, and concentration, persistence, and pace) and did not experience repeated episodes of decompensation. (R. 483).

On September 23, 2010, Rachel Hill, Ph.D., a state agency consultant, performed a psychological evaluation. (R. 580). Plaintiff reported to Dr. Hill that she was hospitalized in 1992 following a suicide attempt, and years later, saw a counselor and psychiatrist at Safe Harbor. (R. 581). However, she was not currently receiving treatment. (R. 581). A mental status examination revealed that Plaintiff's thought processes were coherent and goal-directed with no evidence of hallucinations, delusions, paranoia, confusion, irrelevancy, circumstantiality, tangentiality, loosening of associations, flight of ideas, or blocking. (R. 582). Her affect was

dysphoric, depressed, anxious, and tense, and her mood was dysthymic. (R. 582). She was well-oriented, and displayed good attention and concentration. (R. 583). Moreover, her intellectual functioning was average and her general fund of information was good. (R. 583). Finally, she displayed fair insight and fair-to-poor judgment. (R. 583). Based on this examination, Dr. Hill opined that Plaintiff can "follow and understand simple directions and instructions;" "perform simple tasks independently;" "maintain attention and concentration at least for a while;" "maintain a regular schedule occasionaly and not all the time;" "learn new tasks;" and "perform complex tasks independently." (R. 583). Dr. Hill also found that Plaintiff "does not make very good decisions;" "relates marginally with other people;" and "does not deal very well with stress." (R. 584). In conclusion, Dr. Hill remarked that "[t]he results of this evaluation are consistent with a psychiatric problem that I do believe significantly interferes with her ability to function on a daily basis," and her prognosis was "[f]air given her level of functioning." (R. 584). Dr. Hill also recommended that Plaintiff seek treatment for her condition. (R. 584).

Five days later, Plaintiff returned to Safe Harbor for the first time since 2004. (R. 605). Shortly thereafter, she was diagnosed with depressive disorder and anxiety and assessed a GAF score of 55. (R. 622-23). From October 2010 until August 2011, Plaintiff had medication management appointments with the staff at Safe Harbor. Her condition was, for the most part, stable, with her global assessment of functioning ("GAF") scores consistently in the mid-to-upper 50s.[1] (R. 614, 616, 619, 622).

---

1. A patient's GAF score measures, on a scale of 0-100, the overall effect of her mental health disorder on her ability to function in activities of daily living, as well as socially and occupationally. *See* Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition-Revised 34 (4th ed. Text Rev., Am. Psych. Assoc. 2000). An individual with a GAF score of 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning;" of 50 may have "[s]erious symptoms (e.g., suicidal ideation . . . )" or "impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job);" of 40 may

On August 1, 2011, however, during a routine medication management appointment, Plaintiff reported to the nurse at Safe Harbor that she was "in a funk." (R. 610). She was feeling depressed and irritable, with continued sleep disturbances. (R. 610). Moreover, although she reported that her Zoloft prescription usually worked well, she recently "ran out" of pills and missed several days. (R. 610). Additionally, she refused to try an increased dosage, as had been previously recommended. (R. 610).

On August 15, 2011, Plaintiff started to receive counseling from a therapist at Safe Harbor. (R. 607). The record reflects that she received individual therapy once more in August, three times in September, and once in October. (R. 605). However, no notes from these sessions appear in the record.

At her September 27, 2011 medication management appointment, Plaintiff reported that she was not doing "real well." (R. 607). She said that she was at her "breaking point," and, as a result, she was encouraged to consider checking into Safe Harbor's crisis residential unit ("CRU"). (R. 607). She was also encouraged to increase her dosage of Zoloft and to take Klonopin more frequently. (R. 607). A mental status examination revealed that Plaintiff was alert, oriented x3, pleasant, and conversant, but she had a dysphoric mood and a labile, tearful, and anxious affect. (R. 607). Based on these factors, Plaintiff was given a GAF of 55. (R. 608).

On September 29, 2011, Plaintiff was admitted into the CRU at Safe Harbor. (R. 631, 634). The next day, she reported that she was very tearful and sad, had trouble sleeping, and had no appetite. (R. 631). She also reported having had fleeting thoughts of death and panic attacks a

---

have "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood; of 30 may have behavior "considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment (e.g., . . . suicidal preoccupation)" or "inability to function in almost all areas . . .; of 20 "[s]ome danger of hurting self or others ... or occasionally fails to maintain minimal personal hygiene ... or gross impairment in communication." *Id.*

5

few times per week, along with constant worry and racing thoughts. (R. 631). Upon examination, Plaintiff was found to be alert and oriented, cooperative, and dressed appropriately with good hygiene. (R. 632). Her mood was depressed and affect moderately anxious, but her thoughts were clear and coherent, with no delusions. (R. 632). She had a GAF of 49. (R. 633).

On October 1, while still in the CRU, Plaintiff presented for a routine medication check. (R. 636). Although she reported that she felt the CRU was "amazing," she was torn between staying and leaving in order to take care of her daughter, who was sick at home. (R. 636). She reported that she had learned a lot about coping with her anxiety, was eating and sleeping better, and was amazed by how much better she felt as a result. (R. 636). She also indicated that her medications were working well and felt somewhat better after having increased her dose of Zoloft. (R. 636). A mental status examination was unremarkable, and she had a GAF of 55. (R. 636-37). She was discharged later that day, apparently because she wanted to go home to care for her daughter. (R. 634).

### B. Procedural History

Plaintiff protectively filed applications for DIB and SSI on July 29, 2010. After her claims were initially denied, she requested a hearing, which was held on October 20, 2011 before Administrative Law Judge ("ALJ") James J. Pileggi in Erie, Pa. (R. 20-37). Plaintiff was represented by counsel and testified at the hearing, as did an impartial vocational expert ("VE").

On November 22, 2011, the ALJ denied Plaintiff's claims for benefits, after having found that she was "not disabled" under the Act. (R. 20-37). The ALJ's decision became the final decision of the Commissioner on August 9, 2013, when the Appeals Council denied Plaintiff's request for review. (R. 1-6). On October 2, 2013, Plaintiff filed her Complaint in this Court seeking judicial review of the decision of the ALJ. The pending cross-motions for summary

judgment followed.

## III. Legal Analysis

### A. Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g), 1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 400 (1971) (citation omitted). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798, 800 (3d Cir. 2010) (citation omitted).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520, 416.920. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work that exists in significant numbers in the national economy. *See* 42 U.S.C. § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (citation omitted); 42 U.S.C. § 423 (d)(1). This may be done in

two ways: (1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, *see Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell*, 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or, (2) if the claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job. *Newell*, 347 F.3d at 545-46; *Jones*, 364 F.3d at 503. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell*, 347 F.3d at 546; *Jones*, 364 F.3d at 503.

When a claimant has multiple impairments that may not individually reach the level of severity necessary to qualify for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 502 (3d Cir. 2009); 42 U.S.C. § 423(d)(2)(C).

**B.    ALJ's Decision**

The ALJ determined that Plaintiff was "not disabled" at the fifth step of the sequential evaluation process. At step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (R. 25). At steps 2 and 3, the ALJ found that Plaintiff's

depression, post-traumatic stress disorder ("PTSD"), and anxiety are severe impairments, but that none of those impairments, alone or in combination, meet or equal any of the Listed Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, particularly listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders). (R. 26).

The ALJ went on to assess Plaintiff's RFC and found that she can perform a full range of work at all exertional levels but with the following non-exertional impairments:

> The claimant is limited to simple, repetitive tasks involving routine work processes and settings. These tasks may not involve high stress, which is defined as requiring high quotas or close attention to quality production standards. She may not engage in interactions with the public, or participate in teamwork or team type activities.

(R. 28). Finally, although the ALJ found that Plaintiff could not perform her past relevant work, he found that there are a significant number of jobs in the national economy that she can perform despite her non-exertional impairments. (R. 31). In particular, the VE testified that Plaintiff can perform the requirements of representative occupations such as dishwasher (100,000 jobs), cleaner (100,000 jobs) and grounds worker (50,000 jobs). (R. 31). Accordingly, based on the VE's testimony, the ALJ concluded that Plaintiff is "not disabled" under the Act. (R. 32).

### C. Discussion

Plaintiff argues that the ALJ erred in having accorded controlling weight to the opinions of her primary care physician, Dr. Edwards, regarding her mental health because she "treated with Dr. Edwards primarily for physical conditions, and only for a short time regarding her mental health." Pl.'s Br. in Supp. of Mot. for Summ. J. at 10 (ECF No. 12). According to Plaintiff, Dr. Edwards' opinions were not the "best evidence available" regarding her mental health and, instead of giving those opinions controlling weight, the ALJ should have deferred to the "treatment records from Safe Harbor" and the opinion of Dr. Hill, the state agency mental

9

health examiner. *Id.* at 11-14. The Court agrees that the ALJ did not sufficiently explain his decision as it pertained to the medical opinion evidence in the record.

Generally, a treating physician's opinions are entitled to "greater weight" than "the findings of a physician who has examined the claimant only once or not at all." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). In some cases, such opinions must be accorded "controlling weight," which means they must be adopted. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)); Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *1 (SSA July 2, 1996). However, "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record."[2] *Id.* at *2.

The ALJ concluded that Dr. Edwards' opinions were both well-supported and consistent with the other evidence, but a review of the record belies that assertion. First of all, Dr. Edwards did not offer any findings or explanations in support of his opinions. He simply filled out a "check-box form," which is considered "weak evidence at best" of the nature and severity of a claimant's impairments. *Mason*, 994 F.2d at 1065. Nor did Dr. Edwards' treatment records reflect any observations or discussions of Plaintiff's mental health, so it is far from clear how he arrived at his conclusions.

Second, there *is* contradictory medical evidence in the record that suggests that Plaintiff was more restricted than Dr. Edwards believed. In fact, all of the opinion evidence other than that from Dr. Edwards suggested that Plaintiff had greater restrictions. Specifically, whereas Dr.

---

2. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency must rely in deciding cases. 20 C.F.R. § 402.35(b).

Edwards opined that Plaintiff had no limitations in activities of daily living, social interactions, and maintaining concentration, persistence, and pace, Dr. Rohar found that Plaintiff had "mild" limitations in each of those areas of functioning. Similarly, Dr. Hill opined that Plaintiff could maintain attention/concentration *but only* "*for a while*;" could "maintain a regular schedule occasionally and *not all the time*;" "does not make very good decisions;" "relates marginally with other people;" and "does not deal very well with stress." (R. 583-84) (emphasis added). Overall, Dr. Hill found that Plaintiff's mental impairment "*significantly interferes* with her ability to function on a daily basis." (R. 584) (emphasis added). Additionally, during the relevant time period, Plaintiff was assessed GAF scores ranging from 49 to 58, which are indicative of moderate-to-serious limitations in functioning. Although none of this evidence necessarily suggests that Plaintiff was markedly restricted, it is nonetheless inconsistent with Dr. Edwards' belief that Plaintiff had absolutely no limitations on account of her mental impairments. Moreover, Plaintiff is correct that insofar as a conflict existed, the opinion of Dr. Hill, a psychologist, regarding Plaintiff's mental health, "would seem to deserve greater deference" than the opinion of Dr. Edwards, Plaintiff's primary care physician who treated her primarily for physical ailments. *Mason*, 994 F.2d at 1067 (citing *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).

In view of these clear discrepancies, the ALJ erroneously determined that Dr. Edwards' opinions were entitled to controlling weight. The case must be remanded so that the ALJ can properly assess Dr. Edwards' opinions vis-à-vis the competing medical evidence and in light of the factors set forth in 20 CFR 404.1527 and 416.927. *See* SSR 96-2p, 1996 WL 374188, at *4 (explaining that even when a treating physician's opinion is not entitled to controlling weight, it still must be "weighed using all of the factors provided in 20 CFR 404.1527 and 416.927").

The Court also agrees that the ALJ insufficiently explained how he evaluated Dr. Hill's opinions, and this error also warrants a remand. In discussing Dr. Hill's opinions, the ALJ wrote:

> During [Dr. Hill's] examination, the claimant demonstrated good attention, concentration, and memory. She also demonstrated average intellectual functioning, and fair insight. Dr. Hill diagnosed the claimant with posttraumatic stress disorder and noted that the claimant has drug abuse in remission. The evaluator noted concern that the claimant was not in treatment. Nonetheless, Dr. Hill opined that the claimant could follow simple instructions and complete tasks independently, but has difficulty dealing with stress.

(R. 30). The ALJ then explained that Dr. Hill's opinions were "afforded great weight." (R. 30).

However, although his RFC assessment was largely consistent with Dr. Hill's findings, he did not adopt all of her findings and provided no explanation as to why. Most notably, while Dr. Hill opined that Plaintiff could only "occasionally" "maintain a regular schedule," the ALJ implicitly found that Plaintiff could meet the demands of competitive work on a sustained and continuing basis, i.e., eight hours a day, five days a week. Had the ALJ adopted Dr. Hill's findings *in toto*, Plaintiff would have been found disabled, based on the VE's testimony.

To be sure, the ALJ was not required to adopt each of Dr. Hill's opinions, even if he found them, on the whole, to be entitled to "great weight." Rather, he could have adopted some opinions and rejected others. But before doing so, he was at least required to explain why the opinions that were inconsistent with his RFC assessment were not adopted. SSR 96–5p, 1996 WL 374183, at *2 (SSA July 2, 1996); *see Lodwick v. Astrue*, No. 10–1394–SAC, 2011 WL 6253799, at *5 (D. Kan. Dec. 13, 2011); *Narlock v. Comm'r of Soc. Sec.*, No. 07-524, 2008 WL 3364690, at *6 (M.D. Fla. Aug. 8, 2008). Not only did the ALJ fail to do that, but he also failed to even so much as acknowledge that a discrepancy existed, and instead "cherry-pick[ed]" or disregarded "medical assessments [from Dr. Hill] that ran counter to his finding." *Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 535 (3d Cir. 2011 (non-precedential). As a result, the

Court cannot say with certainty that the ALJ's RFC assessment was accurate and free from error. Nor can it fill the "errors, omissions or gaps" in the ALJ's analysis by independently resolving this discrepancy. *Cefalu v. Barnhart*, 387 F. Supp. 2d 486, 491 (W.D. Pa. 2005) (citation omitted). Accordingly, on remand, the ALJ must accurately describe Dr. Hill's opinions (specifically, Dr. Hill's opinion regarding Plaintiff's difficulty in maintaining a regular work schedule more than "occasionally"), and, to the extent that he does not adopt portions of those opinions, he must adequately explain his reason(s) for doing so as required by SSR 96–5p.[3]

## IV. Conclusion

Under the Social Security regulations, a federal district court, upon review of a decision of the Commissioner, which denied Plaintiff's claim for benefits, has three options. The Court can affirm the decision, reverse the decision and award benefits directly to a claimant, or remand the matter to the Commissioner for further consideration. 42 U.S.C. § 405(g) (sentence four). In light of an objective review of all of the evidence in the record, the Court finds that the ALJ failed to support his decision with substantial evidence and that the decision must be remanded to the ALJ for further consideration consistent with this Opinion. The Commissioner's decision

---

3. Plaintiff's argument regarding the ALJ's treatment of the medical records from Safe Harbor is ill-conceived, however. Put simply, she "confuses 'medical opinion' evidence – which is governed by 20 C.F.R. § 404.1527 as discussed above – with the evidence in the record more generally." *Love-Moore v. Colvin*, No. 12-104-D, 2013 WL 5366967, at *11 (E.D.N.C. Aug. 30, 2013). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical and mental restrictions." 20 C.F.R. § 404.1527(a)(2). While an ALJ obviously must consider medical records in rendering his decision, "[o]nly those statements within the records that reflect judgments regarding a claimant's prognosis or limitations, or the severity of symptoms, constitute medical opinions" subject to the procedural requirements of 20 C.F.R. § 404.1527(c). *Love-Moore*, 2013 WL 5366967, at *11 (citations omitted). When framed in this manner, it becomes clear that the records from Safe Harbor, considered as an undifferentiated whole, are not "medical opinions" and, contrary to Plaintiff's argument, were not entitled to receive "greater weight" than Dr. Edwards' opinions. Accordingly, the ALJ need not revisit this issue on remand.

in the present case may, however, ultimately be correct and nothing hereinabove stated should be taken to suggest that the Court has concluded otherwise.

For these reasons, Plaintiff's motion for summary judgment will be **GRANTED** insofar as it requests a remand for further consideration in accordance with sentence four of 42 U.S.C. § 405(g); the Commissioner's motion for summary judgment will be **DENIED**; and the decision of the ALJ will be **VACATED** and **REMANDED** for further consideration consistent with this Opinion. An appropriate order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TRACY LEE HAWLEY**,<br>   **Plaintiff**,<br><br>   v.<br><br>**CAROLYN W. COLVIN**,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br>   **Defendant.** | ) <br> ) <br> ) <br> ) 1:13-cv-296 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER OF COURT

**AND NOW**, this 29th day of July 2014, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that Plaintiff's Motion for Summary Judgment is **GRANTED**, insofar as it requests a remand; the Commissioner's Motion for Summary Judgment is **DENIED**; and the case is **REMANDED** for further proceedings consistent with the foregoing Memorandum Opinion. It is further **ORDERED** that the Clerk shall docket this case **CLOSED**.

                   BY THE COURT:

                   s/Terrence F. McVerry
                   United States District Court Judge

cc:  **R. Christopher Brode, Esq.**
   Email: brodelaw@hotmail.com

   **Christian A. Trabold, Esq.**
   Email: christy.wiegand@usdoj.gov

   **Christine A. Sanner, Esq.**
   Email: Christine.Sanner@usdoj.gov

   Via CM/ECF